IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

98 JUN 15 AM 10:21

CLERK - LAS CRUCES

FEDERAL LANDS LEGAL CONSORTIUM;
on behalf of its members; and
Rose Coleman, Herschel & Ramona
Downs, R.R. & D. Drachman, Dan
Heap, Glen McCarty, E.A. Robart
Estate, Marian C. Robart, Walter
L. Wiltbank, Emer & Esther Wiltbank,
Lazy YJ Ranch, W. & B. Quinslar, Fost
& Gaylan Flake, Marlin L. Maxwell,
C.R. Truelock, Williams Ranch, Gaylord
"Bob" & Lucinda Yost, Harold B. LeSueur,
Butler Farms, Zeno Kiehne, Hugh McKeen,
Joe Milligan & Lucille Milligan Lumpkin,
Fowler Cattle Co.; APACHE COUNTY, ARIZONA;
CATRON COUNTY, NEW MEXICO,

ENTERED ON DOCKET
6/15/98

      Plaintiffs,

vs.                                       Civ. No. 97-1126-HB-JHG

UNITED STATES OF AMERICA; DAN GLICKMAN,
Secretary of the United States Department
of Agriculture; MIKE DOMBECK, Chief of the
United States Forest Service; CHARLES
CARTWRIGHT, Regional Forester, Southwestern
Region; ABEL CAMARENA, Forest Supervisor
for the Gila National Forest; and JOHN BEDELL,
Forest Supervisor for the Apache-Sitgreaves
National Forest,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction, filed March 20, 1998.[1] Having reviewed the

---

[1] On May 20, 1998, in open court, the Court ruled on the following motions: (1) Federal Defendants' Motion to Transfer Venue to the District of Arizona, filed May 8, 1998; (2) Federal Defendants' Motion in Limine, filed May 15, 1998; and (3) Plaintiffs' Motion to Strike Defendants' Motion in Limine, filed May 29, 1998. The Court denied Federal Defendants' Motion to Transfer Venue, granted Defendants' Motion in Limine, and denied



motion, the memoranda in support and in opposition, the applicable law, and having heard the parties' arguments in open court on May 20th and May 21st, the Court finds that Plaintiffs' motion for preliminary injunction is not well taken and will be denied.

## I.  Factual Background

Plaintiffs hold permits to graze livestock on the Gila and Apache-Sitgreaves National Forests. Plaintiffs seek to enjoin implementation of Defendant United States Forest Service's (Forest Service) decisions to modify Plaintiffs' livestock term grazing permits. Five of the twenty permit decisions at issue in this case govern livestock grazing on six allotments on the Gila National Forest in New Mexico, and the other fifteen decisions apply to twenty allotments on the Apache-Sitgreaves National Forest in Arizona. Federal Defs.' Ex. A & B. The two national forests arrived at the decisions to adjust livestock grazing levels in the new livestock term grazing permits in different ways.

On the Gila National Forest, at the end of 1995 and prior to the expiration of existing permits, site-specific analyses were completed, pursuant to the National Environment Policy Act (NEPA), 43 U.S.C. § 4321 et seq. The new permits were issued and fully implemented beginning in 1996.

Of the new permits issued on the Gila National Forest, only the permit for the Tailor Creek allotment contained a reduction in numbers of livestock allowed to graze on the allotment but remained

---

Plaintiffs' Motion to Strike Defendants' Motion in Limine.

the same in season of use. Libby Decl. Defs.' Ex. B. The permit for the Cedar Breaks allotment remained the same but contained new management requirements. Id. The new permits for the other four allotments, Agua Fria, West Sand Flat, East Canyon, and Whiterocks, contained only reductions in season of use. Id. The East Canyon allotment would be closed for five years to allow for resource recovery, followed by a reduction in season of use. The permittees for the Agua Fria and Whiterocks allotments did not appeal their permit decisions, the permittee appeal for the West Sand Flat allotment was dismissed as untimely, and the permittee appeals for the Tailor Creek and East Canyon allotments are still pending.

On the Apache-Sitgreaves National Forest, the site-specific NEPA analyses were not completed prior to the expiration of the existing permits. Therefore, new permits were issued with identical terms and conditions as the expired permits, pursuant to § 504(b) of the Rescissions Act of 1995, Pub.L. No. 104-19, 109 Stat. 194, 212-213.[2] After completion of the NEPA processes, the new permits on the Apache-Sitgreaves National Forest were modified to incorporate the results of the site-specific analyses as

---

[2] Section 504(b) states:

**Reissuance Pending NEPA Compliance.** Notwithstanding any other law, term grazing permits which expire or are waived before the NEPA analysis and decision pursuant to the schedule developed by individual Forest Service System units, shall be issued on the same terms and conditions and for the full term of the expired or waived permit. Upon completion of the scheduled NEPA analysis and decision for the allotment, the terms and conditions of existing grazing permits may be modified or re-issued, if necessary to conform to such NEPA analysis.

3

authorized by § 504(b). Once the decisions were finalized, affected permittees were given one-year notices prior to implementation of the modifications pursuant to 36 C.F.R. § 222.4(8).[3] Additionally, pursuant to Forest Service guidelines, any reductions in livestock numbers on these allotments are being accomplished over the course of three years (one third of the reduction each year), beginning in 1997.

The adjustments to the livestock grazing levels allowed under the modified term grazing permits for the allotments in the Apache-Sitgreaves National Forest generally included reductions in numbers in all permits. The exceptions were the permits for the Voight allotment and the Clay Springs allotment. The permit for the Voight allotment contained only a reduction in season of use of forty-five days. The permit for the Clay Springs allotment increased the number of cattle allowed to graze but contained a nine-month reduction in season of use. Most of the modified permits also contained various degrees of reductions in season of use. All permittees administratively appealed the decisions affecting the permits for the allotments on which they graze livestock on the Apache-Sitgreaves National Forest.

---

[3] Section 222.4(a)(8) provides:

(a) The Chief, Forest Service, is authorized to cancel, modify, or suspend grazing and livestock use permits in whole or in part as follows:

(8) Modify the seasons of use, numbers, kind, and class of livestock allowed or the allotment to be used under the permit, because of resource condition, or permittee request. One year's notice will be given of such modification, except in cases of emergency.

4

After the Forest Service upheld all decisions, Plaintiffs filed this lawsuit, alleging, <u>inter alia</u>, that Defendants' actions violated the United States Constitution. Specifically, Plaintiffs allege that grazing permits are protected property interests under the Fifth Amendment of the United States Constitution, and that Defendants deprived them of that property without providing them due process of law. Plaintiffs' due process claim is the basis for their preliminary injunction motion.

## II.  Discussion

### A.  Preliminary Injunction Standard

A party seeking preliminary injunctive relief must establish the following: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest. <u>Kansas Health Care Ass'n Inc. v. Kansas Dep't of Social and Rehabilitation Services</u>, 31 F.3d 1536, 1542 (10th Cir. 1994). "Because a preliminary injunction is an 'extraordinary remedy . . . the right to relief must be clear and unequivocal.'" <u>Id.</u> at 1543. Plaintiff carries the burden of proof. <u>Penn v. San Juan Hosp., Inc.</u>, 528 F.2d 1181, 1185 (10th Cir. 1975).

The Tenth Circuit has adopted a modified likelihood of success requirement. <u>Walmer v. United States Dep't of Defense</u>, 52 F.3d 851, 854 (10th Cir. 1995). If the movant has satisfied the other

three requirements for a preliminary injunction, the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation. Id.

### 1. Success on the Merits

Plaintiffs contend that their livestock term grazing permits constitute protected property interests. Plaintiffs further contend that Defendants' decisions renewing Plaintiffs' permits with modifications that reduced their grazing rights deprived them of a "substantial component of that protected property interest" without due process of law.[4] Pls.' Mem. in Supp. of Pls.' Mot. for Prel. Inj. at 3. Finally, Plaintiffs maintain the Forest Service appeals procedures do not provide due process of law. Id. Plaintiffs' contend the Forest Service's appeals procedures "are facially inadequate to provide due process of law because they fail to provide for an evidentiary hearing at any point. Pls.' Mem. in Supp. of Mot. for Prel. Inj. at 10. Plaintiffs' also contend that "other factors fatal to the constitutionality of Defendants [sic] procedures are the failure to incorporate cross examination of witnesses, and the lack of an impartial adjudicator." Id.

Defendants counter that "livestock term grazing permits convey no rights or interests in public lands and resources held by the

---

[4] Plaintiffs do not contend that the Forest Service decisions constitute a taking compensable pursuant to the Takings Clause of the Fifth Amendment.

6

United States." Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 1. Defendants rely on § 580l of the Granger-Thye Act, 16 U.S.C. § 580, et seq., which provides:

> The Secretary of Agriculture in regulating grazing on the national forests and other lands administered by him in connection therewith is authorized, upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof: <u>Provided</u>, that nothing herein shall be construed as limiting or restricting any right, title, or interest of the United States in any land or resources.

Defendants also cite 36 C.F.R. § 222.3(b) in support of their position. Section 222.3(b) provides that "[g]razing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources."

Even assuming that Plaintiffs may have a property interest in their term livestock grazing permits, the Court finds that Defendants provided them due process of law. Appeals of decisions relating to occupancy and use of National Forest lands are governed by 36 C.F.R. § 251, subpart C. The rules set out in subpart C, "seek to offer appellants a fair and deliberate process for appealing and obtaining administrative review of decisions regarding written instruments that authorize the occupancy and use of National Forest System lands." 36 C.F.R. § 251.80(b).

Pursuant to § 251.84, the Deciding Officer is required to give written notice of appealable decisions to the appellant. 36 C.F.R. § 251.84. The notice must include a statement of the Deciding Officer's willingness to meet with appellants to hear and discuss any concerns or issues related to the decision. <u>Id.</u> The notice

must specify the name of the officer to whom an appeal of the decision may be filed, the address and the deadline for filing an appeal.

As part of the notice of appeal, an appellant must provide "a Reviewing Officer sufficient narrative evidence and argument to show why a decision by a lower level officer should be reversed or changed." 36 C.F.R. § 251.90(a). The appellant must include the following information in a notice of appeal:

(1) A statement of how the appellant is adversely affected by the decision being appealed;

(2) Specific references to any law, regulation, or policy that the appellant believes to be violated and the reason for such an allegation;

(3) A statement as to whether and how the appellant has tried to resolve the issue or issues being appealed with the Deciding Officer, the date of any discussion, and the outcome of that meeting or contact; and

(4) A statement of the relief the appellant seeks.

36 C.F.R. § 251.90(b). The Deciding Officer must then respond to the specific facts or issues of law or regulation and the requested relief set forth by the appellant in the notice of appeal. 36 C.F.R. § 251.94(a). Appellant has twenty days of the postmarked date of the Deciding Officer's responsive statement to file a written reply. 36 C.F.R. § 251.94(c). The Reviewing Officer may set procedures "to ensure orderly, expeditious, and fair conduct of an appeal" and "may ask any party to an appeal for additional information as deemed necessary to decide the appeal." 36 C.F.R. §§ 251.95(a),(c). The Reviewing Officer must notify all parties of the request for information, give opportunity to comment, and

extend time periods if necessary to allow for submission of the information. Id.

Section 251.90(c) provides an appellant the opportunity to request an oral presentation at the first level of appeal and may seek a stay of implementation of the decision pending resolution of the appeal. A Reviewing Officer must grant an oral presentation if the appellant requested the presentation as part of the notice of appeal. 36 C.F.R. § 251.97(b). The purpose of the oral presentation is "to restate, emphasize, and/or clarify information related to an appeal. 36 C.F.R. § 251.97(a). Although oral presentations are conducted in an informal manner, nonetheless, they provide an additional opportunity for an appellant to present his viewpoints to the Reviewing Officer. Id.

The Court finds that the Forest Service's extensive appeals process satisfied all due process requirements. Plaintiffs' have provided no evidence to support their claim that they were not provided an "impartial adjudicator." Based on the foregoing, the Court finds that Plaintiffs have not demonstrated a substantial likelihood of prevailing on the merits.

### 2. Establishment of Irreparable Harm

Plaintiffs claim the Forest Service's decisions will cause them irreparable harm. The testimony presented at the May 20th and 21st hearing by Plaintiffs' witnesses and in Plaintiffs' affidavits focused on economic injuries Plaintiffs claim they will suffer once Forest Service's decisions modifying their permits are fully implemented.

9

Plaintiff Dan Heap, a rancher from Arizona, testified that two-thirds of his income was generated by livestock operations. Tr. at 40. Mr. Heap testified his ranch consisted of private land and forest land which included the Campbell, Upper Campbell Blue, and Big Lake allotments. Id. The Upper Campbell Blue allotment which is located in the Arizona-Sitgreaves National Forest is the subject of this litigation due to the Forest Service's decision to reduce the number of livestock and the season of use.[5] Mr. Heap further testified that with the reduction of livestock and the reduction in season of use his ranch would no longer be a profitable business. Id. at 52.

Plaintiff Hugh McKeen holds a permit to the Cedar Breaks allotment in the Gila National Forest. Mr. McKeen testified that the Forest Service's decision did not result in a reduction of season of use or the permitted number of cattle. Tr. at 69. However, the Forest Service decision reduced Mr. McKeen's utilization standards. According to Mr. McKeen, the range utilization was reduced from approximately 30-70 % to 5-20 % under the new permit. Id. at 70. He testified that under the new standards and guidelines he would be facing a 66% reduction in range utilization. Id. at 72. Mr. Mckeen has been operating under the new permit for two years. Tr. at 86.

Plaintiff Rose Coleman holds a permit to graze livestock on the Fishhook, Steeple Mesa, Fish Creek, and Hannagan allotments in

---

[5] The Forest Service has estimated the total reduction at approximately 46% animal-months.

the Arizona-Sitgreaves National Forest. The Forest Service reduced her Animal Months by 81%. Ms. Coleman testified that the Forest Service's decision affecting her permit would force her to give up ranching since 95% of her income was generated by her livestock operation.[6] Tr. at 92. Ms. Rita Blow, Ms. Coleman's economist, testified Ms. Coleman could not continue ranching under the new permit "because her costs per animal would exceed her income per animal." Tr. at 155. Based on the testimony presented at the hearing and the affidavits submitted, the Court finds that Plaintiffs have established irreparable harm.

### 3. Balance of Harms and Public Interest

Plaintiffs have not demonstrated that their financial injury outweighs the injury an injunction would cause Defendants or that an injunction would not be adverse to the public interest. In this case, an injunction involves potential injury to the environment. "An environmental injury usually is of an enduring or permanent nature, seldom remedied by money damages and considered irreparable." Catron County Board of Commissioners v. United States Fish and Wildlife Service, 75 F.3d 1429, 1440 (10th Cir. 1996). Moreover, Defendants' experts presented evidence demonstrating the potential detrimental effects of livestock grazing on certain species listed under the Endangered Species Act (ESA). See e.g. Tr. 249-307 (Testimony of Jim Copeland). Each of the allotments at issue involve one or more species listed under

---

[6] Plaintiffs who submitted affidavits also allege economic harm.

11

the ESA. For claims involving endangered species, "the balance of hardships and the public interest tip heavily in favor of endangered species." Sierra Club v. Marsh, 816 F.2d 1376, 1383 (9th Cir. 1987)(citing TVA v. Hill, 437 U.S. 153, 187-88 (1978)). Accordingly, Plaintiffs' motion for preliminary injunction is denied.

NOW, THEREFORE,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction is denied.

HOWARD C. BRATTON
District Judge